341 So.2d 251 (1976)
Peggy BLITCH, Appellant (Petitioner),
v.
James E. BLITCH, Appellee (Respondent).
No. Z-79.
District Court of Appeal of Florida, First District.
December 30, 1976.
*252 Charles K. Ruse, Jr., Ocala, for appellant.
Andrew G. Pattillo, Jr., of Pattillo, MacKay & McKeever, Ocala, for appellee.
MILLS, Judge.
By its final judgment dissolving the marriage between Peggy and James, the trial court determined that David Mikel Blitch, the child named in the petition, was not a child of the marriage. The only issue here is whether the court erred in this determination.
Peggy and James were married on 1 June 1970. On their marriage license application, both swore under oath that they were expectant parents. On 14 January 1971, David was born. On 11 September 1973, Peggy filed a petition for dissolution of marriage and alleged that David was a child of the marriage. In his answer, James admitted this allegation. However, over a year later he amended his answer and denied that David was a child of the marriage.
James stated that he was not the father of the child, but he admitted that he had intercourse with Peggy prior to the marriage. He also contended that Peggy had intercourse with another man prior to the marriage. He claimed that Peggy told him that she was pregnant before they had intercourse and that they did not have intercourse until a couple of weeks before their marriage. He admitted that the child was born during the marriage and that he acknowledged to other persons that he was the father. James' grandmother and sister said that Peggy told them that James was not the father of the child.
Peggy stated that James was the father of the child; that at the time she married James, he knew she was pregnant; and that he insisted on marrying her. Peggy also stated that she did not believe that she was pregnant when she and James had premarital intercourse.
In Eldridge v. Eldridge, 153 Fla. 873, 16 So.2d 163 (1944), the husband and wife first met on 22 June 1941, were married on 16 July 1941, and had a child on 9 February 1942. The child was born 226 days after their first meeting. The husband claimed he was not the father of the child. The Supreme Court stated:
"Where the legitimacy of a child born in wedlock is questioned by the husband and reputed father, one of the strongest rebuttable presumptions known to the law is required to be overcome before the child can be bastardized. At common law, the presumption was at one time virtually conclusive... . The rule is well established in this country that the husband may make the attack, but in so doing he must overcome the strong presumption of legitimacy by clear and satisfactory testimony... . The better rule is that the husband is not required to prove his contention beyond all reasonable doubt, yet his proof must be sufficiently strong to clearly remove the presumption of legitimacy. The evidence must more than cast a strong suspicion or grave doubt on the paternity of the child. "There is authority that the presumption is weakened in cases where it is found that the child was born in wedlock but conceived prior thereto.... The better view which is adhered to by most courts is to the effect that under such circumstances the presumption is not weakened. We prefer to adhere to the latter rule. It is supported by public policy and a wealth of authority."
In Eldridge, the child was born 226 days from the first meeting of the parties. In this case, the child was born 228 days after the marriage of the parties and at least 242 days after James admitted having intercourse with Peggy.
The purpose of the strong presumption in favor of legitimacy when a child is either born or conceived in wedlock is to protect the interest and the welfare of the child. "The child's welfare is paramount. Too often this is forgotten." Sacks v. Sacks, 267 So.2d 73 (Fla. 1972). It was forgotten in this case and we must reverse.
Proof necessary to overcome this strong presumption must be more than an *253 emotional outburst by the wife to the effect that the husband is not the father of the child. The rule is for the protection of the child, and it should not be lightly considered.
Although James contends that Peggy refused to answer a number of relevant and material questions concerning the legitimacy of the child on Fifth Amendment grounds, the record discloses that she did not refuse but merely followed instructions of her counsel.
Reversed and remanded to the trial court for amendment of the final judgment finding that David Mikel Blitch is a child of the marriage and to determine what support, if any, appellee should make for the child.
SMITH, J., concurs.
BOYER, C.J., dissents.
BOYER, Chief Judge, dissenting.
I respectfully dissent. Although I agree with the majority that there is a strong presumption in favor of legitimacy when a child is either born or conceived in wedlock, I cannot agree that the record fails to support the trial court's finding that the evidence presented in this case overcame the presumption. It is axiomatic that where there is sufficient evidence to sustain the trial court's judgment, that judgment will not be disturbed on appeal. It is not our prerogative to reevaluate and reweigh the evidence.
There is more than sufficient evidence present in the record of this case to support the trial court's findings. According to the husband, the wife not only told him that she was pregnant by another man before they engaged in pre-marital intercourse, but she repeatedly re-informed him of that fact during arguments which occurred after the marriage. To further add to the husband's embarrassment, his grandmother testified that the wife informed her on more than twenty occasions that another man was the father of her child. The husband's half-sister also testified that the wife reported the same information to her. While the wife denied that she ever imparted such information to the husband's half-sister and grandmother, the trier of fact had the responsibility of weighing the testimony and determining the credibility of the various witnesses. The trial court, sitting as the trier of fact and being able to carefully observe the demeanor of the witnesses, was in a far better position than this court to decide which testimony to believe.
I do not quarrel with the majority's assertion that the child's welfare is paramount. Notwithstanding that overriding purpose and the strong presumption in favor of legitimacy, a court may not ignore facts in order to reach a desirable result. Where, as here, the trial court has determined that the presumption in favor of legitimacy has been rebutted, and that conclusion is supported by substantial competent evidence contained within the record, an appellate court should not arbitrarily overturn the decision.
I would affirm.