JACOBUS, J.
 

 Laforest Williams (“Appellant”) timely appeals the judgment and sentence entered after a jury found him guilty of robbery with a firearm. Appellant raises three claims of error on appeal. We find Appellant’ first and second claims are without merit. As to the third claim, however, the court erred in permitting the State to elicit testimony from Appellant’s wife in violation of the husband-wife privilege.
 
 [1]
 
 We therefore reverse and remand this matter for a new trial.
 

 This case arises out of the armed robbery of an undercover DEA agent. The agent set up a meeting to purchase a substantial amount of drugs at a drug dealer’s home. Upon arrival at the appointed time and place, the agent found the dealer was not home, but his girlfriend was there. While the agent and the girlfriend were standing outside the home, they were approached by two men with guns. The agent was robbed at gunpoint of $11,500 in marked bills. A neighbor who witnessed part of the robbery called 911. During the 911 call, the dealer’s girlfriend spoke to the dispatcher and stated: “Two-Six just robbed him. Two-Six did.”
 

 At trial, the 911 recording was played to the jury. The State also played the girlfriend’s police statement in which she identified Two-Six as the robber, stated Two-Six was Williams, and stated that she was afraid of him. However, at trial the girlfriend denied making any of these statements and denied the veracity of them.
 

 Defense counsel objected to the testimony on the basis of the husband-wife privilege when the State called Appellant’s wife to testify regarding a conversation she had with Appellant. The State made no showing that the statements between Appellant and his wife were not meant to be confidential or that they were made to a third-party. Nonetheless, the court overruled the objection, finding that the conversation between Appellant and his wife was not intended to be confidential. Mrs. Williams testified that Appellant was known as Two-Six on the street, but she knew him as Laforest. She also testified that before the robbery Appellant told her that he needed money to pay his attorney in Gainesville.
 

 The State makes two arguments in support of its contention that Mrs. Williams’ statements were properly admitted at trial. First, it contends that Appellant waived the privilege by failing to object to Mrs. Williams’ discovery deposition. During that deposition, Mrs. Williams made the same revelations regarding her conver
 
 *198
 
 sation with Appellant as she did at trial. Second, the State claims any error in admitting the statements was harmless.
 

 Our supreme court has ruled that even without an objection, the husband-wife privilege is not waived when one spouse gives deposition testimony regarding conversations with the other spouse.
 
 See Bolin v. State,
 
 642 So.2d 540 (Fla.1994). However,
 
 Bolin
 
 suggests that using the deposition at trial would waive the privilege.
 
 See id.
 
 at 541. Here, Appellant did not object to his wife’s deposition and the deposition was never used at trial. Based on these facts, we conclude Appellant did not waive the husband-wife privilege.
 

 We find that Mrs. Williams’ statement regarding Appellant’s street name was not protected by the husband-wife privilege because that information was known generally in the community. However, considering the record before us, we must conclude that the trial court erroneously permitted Mrs. Williams to testify about Appellant’s statement that he needed money to pay his attorney. A communication between a husband and wife is presumed confidential unless there is evidence to the contrary.
 
 Blau v. United States,
 
 340 U.S. 332, 333, 71 S.Ct. 301, 95 L.Ed. 306 (1951);
 
 Yokie v. State,
 
 773 So.2d 115, 117 (Fla. 4th DCA 2000). At trial, neither Appellant nor his wife testified whether they meant their communication to be private or public. Likewise, there was no testimony that the statement was made in the presence of a third party or that Appellant instructed his wife to disclose this information to another person. Without this information, it is impossible to determine whether Appellant’s statement to his wife was privileged and whether that privilege had been waived. As such, the State did not overcome the presumption that the statement is covered by the husband-wife privilege. Therefore, it was error for the trial court to admit Mrs. Williams’ statements over defense counsel’s objection.
 
 See Blau,
 
 340 U.S. at 333-34, 71 S.Ct. 301 (noting that government made no effort to overcome marital privilege and communication was likely to be confidential);
 
 Yokie,
 
 773 So.2d at 117.
 

 As to the harmless error claim, the State argues that Mrs. Williams’ testimony was limited and did not involve any admissions of guilt by Appellant. As a result, according to the State, Mrs. Williams’ testimony could not have contributed to the jury’s finding of guilt. To establish harmless error, the State must prove, beyond a reasonable doubt, that the alleged error did not contribute to the verdict.
 
 State v. DiGuilio,
 
 491 So.2d 1129, 1138 (Fla.1986).
 

 In this case, there was evidence to tie Appellant to the robbery. Specifically, the undercover agent positively identified him as one of the robbers. The jury heard the 911 call from the dealer’s girlfriend where she identified “Two-Six” as one of the robbers, and the jury learned that the girlfriend told the police that Laforest “was one of the robbers.” The State also presented evidence that some of the marked money stolen during the robbery was found in Appellant’s lawyer’s office in Gainesville. To link the money to Appellant’s guilt, the State needed to show that Appellant delivered the money to his attorney in Gainesville. The State did so by offering Mrs. Williams’ testimony that the attorney knew Appellant and that her husband had told her before he was arrested that he needed money to pay his attorney. Without Mrs. Williams’ testimony, the only evidence linking Appellant to the crime would have been the eyewitness identification by the undercover agent and the girlfriend. Defense counsel attacked both of these identifications at trial and weakened their impact during cross-examination.
 
 *199
 
 Furthermore, the girlfriend stated that the police coerced her into identifying Appellant as one of the robbers.
 

 Looking at all of the facts, it is apparent that although Mrs. Williams’ testimony was brief, it was vital to the State’s case. Accordingly, it is impossible to determine whether its admission contributed to the jury’s verdict. Therefore, we conclude the erroneous admission of Mrs. Williams’ testimony was harmful.
 
 See Bolin,
 
 642 So.2d at 541 (finding erroneous admission of privileged testimony harmful where statements from Bolin to his wife were integral part of State’s case and reviewing court could not determine whether they played significant role in jury’s determination). For the foregoing reasons, the conviction and sentence are reversed and this matter is remanded for a new trial.
 

 CONVICTION and SENTENCE REVERSED, REMANDED for New Trial.
 

 ORFINGER, C.J. and SAWAYA, J., concur.
 

 [1]
 

 . § 90.504(1), Fla. Stat.